IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
IN OPEN COURT

DEC – 2 2022

CLERK U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                      ) | Case No. 1:22-CR-220 |
| ) | |
| ABB LTD.                 ) | Hon. Michael S. Nachmanoff |
| ) | |
| Defendant              ) | |

## **DEFERRED PROSECUTION AGREEMENT**

Defendant ABB Ltd. (the "Company"), pursuant to authority granted by the Company's

Board of Directors reflected in Attachment B, and the United States Department of Justice,

Criminal Division, Fraud Section (the "Fraud Section") and the United States Attorney's Office

for the Eastern District of Virginia (together, the "Offices") enter into this deferred prosecution

agreement (the "Agreement").

### **Criminal Information and Acceptance of Responsibility**

1.      The Company acknowledges and agrees that the Offices will file the attached

four-count criminal Information in the United States District Court for the Eastern District of

Virginia charging the Company with two counts of conspiracy to violate the Foreign Corrupt

Practices Act ("FCPA"), in violation of Title 18, United States Code, Section 371, and two

counts of violating the FCPA, in violation of Title 15, United States Code, Sections 78dd-1 and

78m.  In so doing, the Company: (a) knowingly waives any right it may have to indictment on

these charges, as well as all rights to a speedy trial pursuant to the Sixth Amendment to the

United States Constitution, Title 18, United States Code, Section 3161, and Federal Rule of

Criminal Procedure 48(b); (b) knowingly waives any objection with respect to venue to any

charges by the United States arising out of the conduct described in the Statement of Facts attached hereto as Attachment A ("Statement of Facts") and consents to the filing of the Information, as provided under the terms of this Agreement, in the United States District Court for the Eastern District of Virginia; and (c) agrees that the charges in the Information and any charges arising from the conduct described in the Statement of Facts are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement.  The Offices agree to defer prosecution of the Company pursuant to the terms and conditions described below.

2.     The Company admits, accepts, and acknowledges that it is responsible under United States law for the acts of its officers, directors, employees, and agents as charged in the Information, and as set forth in the Statement of Facts, and that the allegations described in the Information and the facts described in the Statement of Facts are true and accurate.  The Company agrees that, effective as of the date the Company signs this Agreement, in any prosecution that is deferred by this Agreement, it will not dispute the Statement of Facts set forth in this Agreement, and, in any such prosecution, the Statement of Facts shall be admissible as: (a) substantive evidence offered by the government in its case-in-chief and rebuttal case; (b) impeachment evidence offered by the government on cross-examination; and (c) evidence at any sentencing hearing or other hearing.  In addition, in connection therewith, the Company agrees not to assert any claim under the United States Constitution, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, Section 1B1.1(a) of the United States Sentencing Guidelines, or any other federal rule that the Statement of Facts should be suppressed or is otherwise inadmissible as evidence in any form.

**Term of the Agreement**

3.      This Agreement is effective for a period beginning on the date on which the

Agreement is fully executed, or the Information is filed with the Court, whichever comes later,

and ending three years from that date (the "Term").  The Company agrees, however, that, in the

event the Offices determine, in their sole discretion, that the Company has knowingly violated

any provision of this Agreement or has failed to completely perform or fulfill each of the

Company's obligations under this Agreement, an extension or extensions of the Term may be

imposed by the Offices, in their sole discretion, for up to a total additional time period of one

year, without prejudice to the right of the Offices to proceed as provided in Paragraphs 15-19

below.  Any extension of the Agreement extends all terms of this Agreement, including the terms

of the reporting requirement in Attachment D, for an equivalent period.  Conversely, in the event

the Offices find, in their sole discretion, that there exists a change in circumstances sufficient to

eliminate the need for the reporting requirement in Attachment D, and that the other provisions

of this Agreement have been satisfied, the Agreement may be terminated early.

**Relevant Considerations**

4.      The Offices enter into this Agreement based on the individual facts and

circumstances presented by this case and the Company, including:

a.      the nature and seriousness of the offense conduct, as described in the

Statement of Facts, including a multi-year scheme to pay bribes benefitting a high-level official

of Eskom, the state-owned and state-controlled energy company of South Africa;

b.      the Company did not receive voluntary disclosure credit pursuant to the

FCPA Corporate Enforcement Policy in the Department of Justice Manual § 9-47.120, or

3

pursuant to the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines"),

because it did not voluntarily and timely disclose to the Offices the conduct described in the

Statement of Facts; although the Company did not receive voluntary disclosure credit, the

Offices, in evaluating the appropriate disposition of this matter—including the appropriate form

of the resolution—considered evidence that, within a very short time of learning of the

misconduct, the Company contacted the Fraud Section and scheduled a meeting to discuss

matters under investigation by the Fraud Section and the Company.  The Company did not

specifically identify the South Africa misconduct in that meeting request, but it disclosed the

South Africa misconduct during the scheduled meeting, subsequently presented evidence to the

Offices that it intended to disclose the misconduct related to South Africa during the scheduled

meeting and did not know of any imminent media reports when the meeting was scheduled.

However, before the scheduled meeting occurred and prior to making any such disclosure to the

Fraud Section, a media report was published related to the misconduct;

        c.     the Company received full credit for its extraordinary cooperation with the

Offices' investigation pursuant to U.S.S.G. § 8C2.5(g)(2) because it cooperated with the Offices

and demonstrated recognition and affirmative acceptance of responsibility for its criminal

conduct; the Company also received full credit for its cooperation pursuant to the FCPA

Corporate Enforcement Policy, JM § 9-47.120, by, among other things: (i) promptly providing

information obtained through its internal investigation, which allowed the Offices to preserve

and obtain evidence as part of their own independent investigation; (ii) making regular and

detailed factual presentations to the Offices; (iii) voluntarily making foreign-based employees

available for interviews in the United States; (iv) producing relevant documents located outside

the United States to the Offices in ways that did not implicate foreign data privacy laws; and (v)

collecting, analyzing, and organizing voluminous evidence and information that it provided to

the Offices, including the translation of certain foreign language documents;

        d.     the Company engaged in extensive remedial measures, including hiring

experienced compliance personnel and, following a root-cause analysis of the conduct described

in the Statement of Facts, investing significant additional resources in compliance testing and

monitoring throughout the organization; implementing targeted training programs, as well as on-

site supplementary case-study sessions; conducting continuing monitoring and testing to assess

engagement with new training measures; restructuring of reporting by internal project teams to

ensure compliance oversight; and promptly disciplining employees involved in the misconduct;

        e.     the Company has enhanced and has committed to continuing to enhance

its compliance program and internal controls, including ensuring that its compliance program

satisfies the minimum elements set forth in Attachment C to this Agreement (Corporate

Compliance Program);

        f.     based on the Company's remediation and the state of its compliance

program, and the Company's agreement to report to the Offices as set forth in Attachment D to

this Agreement (Enhanced Corporate Compliance Reporting), the Offices determined that an

independent compliance monitor is unnecessary;

        g.     the Company's criminal history, including (i) the Company's 2010

deferred prosecution agreement, accompanied by guilty pleas by U.S. and Jordan-based

subsidiaries, for FCPA violations involving bribes and kickbacks to officials in Mexico and Iraq;

(ii) guilty pleas in 2004 by U.S. and United Kingdom-based subsidiaries for FCPA violations

involving bribery of Nigerian officials; and (iii) a guilty plea in 2001 by an Italy-based subsidiary to a bid-rigging conspiracy involving a construction contract in Egypt; as well as the Company's resolution of administrative actions with European and Brazilian competition authorities in 2013 and 2014;

        h.     the Company's agreement to resolve concurrently a separate investigation by the United States Securities and Exchange Commission ("SEC") relating to the conduct described in the Statement of Facts and its agreement to pay $75,000,000 in civil monetary penalties; and the Company's agreement to resolve additional separate investigations by authorities in South Africa and Switzerland, and its anticipated resolution with authorities in Germany, related to the conduct described in the Statement of Facts, which resolutions the Offices are crediting in connection with the criminal penalty specified in this Agreement;

        i.     the Company's agreement to continue to cooperate with the Offices in any ongoing investigation of the conduct of the Company, its subsidiaries and affiliates and its officers, directors, employees, agents, business partners, distributors, and consultants relating to violations of the FCPA and other applicable anti-corruption laws;

        j.     accordingly, after considering (a) through (i) above, the Offices believe that the appropriate resolution in this case is a deferred prosecution agreement with the Company; a criminal monetary penalty of $315,000,000, which reflects an aggregate discount of 25 percent off the mid-point between the middle and the high end of the otherwise-applicable United States Sentencing Guidelines fine range, as a result of the Company's prior criminal history; and guilty pleas by ABB South Africa (Pty) Ltd. and ABB Management Services Ltd.

## **Ongoing Cooperation and Disclosure Requirements**

5.      The Company shall cooperate fully with the Offices in any and all matters relating to the conduct described in this Agreement and the attached Statement of Facts and other conduct under investigation by the Offices at any time during the Term, until the later of the date upon which all investigations and prosecutions arising out of such conduct are concluded, or the end of the Term specified in Paragraph 3.  At the request of the Offices, the Company shall also cooperate fully with other domestic or foreign law enforcement and regulatory authorities and agencies, as well as the Multilateral Development Banks ("MDBs"), in any investigation of the Company, or any of its subsidiaries or affiliates, or any of its present or former officers, directors, employees, agents, and consultants, or any other party, in any and all matters relating to the conduct described in this Agreement and the Statement of Facts and other conduct under investigation by the Offices during the Term.  The Company's cooperation pursuant to this Paragraph is subject to applicable law and regulations, including data privacy and national security laws, as well as valid claims of attorney-client privilege or attorney work product doctrine; however, the Company must provide to the Offices a log of any information or cooperation that is not provided based on an assertion of law, regulation, or privilege, and the Company bears the burden of establishing the validity of any such an assertion.  The Company agrees that its cooperation pursuant to this paragraph shall include, but not be limited to, the following:

a.      The Company represents that it has truthfully disclosed all factual information with respect to its activities, those of its subsidiaries and affiliates, and those of its present and former directors, officers, employees, agents, and consultants relating to the conduct

7

described in this Agreement and the Statement of Facts, as well as any other conduct under investigation by the Offices at any time about which the Company has any knowledge. The Company further agrees that it shall promptly and truthfully disclose all factual information with respect to its activities, those of its subsidiaries and affiliates, and those of its present and former directors, officers, employees, agents, and consultants about which the Company shall gain any knowledge or about which the Offices may inquire. This obligation of truthful disclosure includes, but is not limited to, the obligation of the Company to provide to the Offices, upon request, any document, record or other tangible evidence about which the Offices may inquire of the Company, including evidence that is responsive to any requests made prior to the execution of this Agreement.

        b.     Upon request of the Offices, the Company shall designate knowledgeable employees, agents or attorneys to provide to the Offices the information and materials described in Paragraph 5(a) above on behalf of the Company. It is further understood that the Company must at all times provide complete, truthful, and accurate information.

        c.     The Company shall use its best efforts to make available for interviews or testimony, as requested by the Offices, present or former officers, directors, employees, agents and consultants of the Company. This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with domestic or foreign law enforcement and regulatory authorities. Cooperation under this Paragraph shall include identification of witnesses who, to the knowledge of the Company, may have material information regarding the matters under investigation.

d.      With respect to any information, testimony, documents, records or other tangible evidence provided to the Offices pursuant to this Agreement, the Company consents to any and all disclosures, subject to applicable laws and regulations, to other governmental authorities, including United States authorities and those of a foreign government, as well as the MDBs, of such materials as the Offices, in their sole discretion, shall deem appropriate.

6.      In addition to the obligations in Paragraph 5, during the Term, should the Company learn of any evidence or allegation of conduct that may constitute a violation of the FCPA anti-bribery or accounting provisions had the conduct occurred within the jurisdiction of the United States, the Company shall promptly report such evidence or allegation to the Offices.

### Payment of Monetary Penalty

7.      The Offices and the Company agree that application of the Sentencing Guidelines to determine the applicable fine range yields the following analysis:

a.      The November 1, 2021 Sentencing Guidelines are applicable to this matter.

b.      <u>Offense Level</u>.  Based on U.S.S.G. § 2C1.1, the total offense level is 42, calculated as follows:

| | | |
|---|---|---|
| (a)(2) | Base offense level | 12 |
| (b)(1) | More than one bribe | +2 |
| (b)(2) | Value of benefit received more than $65,000,000 | +24 |
| (b)(3) | Involvement of high-level official | +4 |
| **TOTAL** | | 42 |

9

       c.    <u>Base Fine</u>.  Based upon U.S.S.G. § 8C2.4(d), the base fine is $150,000,000 (the fine indicated in the Offense Level Fine Table);

       d.    <u>Culpability Score</u>.  Based upon U.S.S.G. § 8C2.5, the culpability score is 8, calculated as follows:

| | | |
|---|---|---:|
| (a) | Base culpability score | 5 |
| (b)(3)(B)(i) | 200 or more employees and high-level personnel | +3 |
| (c)(2)(B) | Prior history | +2 |
| (g)(2) | Cooperation and acceptance of responsibility | -2 |
| **TOTAL** | | **8** |

       e.    <u>Calculation of Fine Range</u>.

| | |
|---|---|
| Base fine | $150,000,000 |
| Multipliers | 1.6 (min) / 3.2 (max) |
| Fine range | $240,000,000 (min) / $480,000,000 (max) |

The Company agrees to pay a total monetary penalty in the amount of $315,000,000 (the "Total Criminal Penalty").  This reflects a 25 percent discount off the mid-point between the middle and the high end of the otherwise-applicable Sentencing Guidelines fine range, to reflect the Company's prior criminal history.  The Company and the Offices agree that the Company will pay the United States Treasury $72,500,000—of which $500,000 will be paid as a criminal fine by ABB South Africa (Pty) Ltd. and $500,000 will be paid as a criminal fine by ABB Management Services Ltd.—within ten (10) business days from the sentencing by the Court of

ABB South Africa (Pty) Ltd. and ABB Management Services Ltd., pursuant to their plea agreements entered into simultaneously herewith.  The Offices agree to credit toward satisfaction of payment of the Total Criminal Penalty as follows:

      (i)      The Offices agree to credit toward satisfaction of payment of the Total Criminal Penalty the amount the Company pays to South African authorities, up to a maximum of $157,500,000, equal to approximately 50 percent of the Total Criminal Penalty, so long as the Company pays such amount to South Africa pursuant to ABB South Africa (Pty) Ltd.'s separate resolution with South African authorities concerning the same underlying conduct described in the Statement of Facts.

      (ii)      The Offices agree to credit toward satisfaction of payment of the Total Criminal Penalty the amount the Company pays to Swiss authorities, up to a maximum of $11,000,000, so long as the Company pays such amount to Switzerland pursuant to ABB Management Services Ltd.'s separate resolution with Swiss authorities concerning the same underlying conduct described in the Statement of Facts.

      (iii)      The Offices agree to credit toward satisfaction of payment of the Total Criminal Penalty the amount the Company pays to German authorities, up to a maximum of $11,000,000, so long as the Company pays such amount to Germany pursuant to an anticipated separate resolution with German authorities concerning the same underlying conduct described in the Statement of Facts.  In the event the Company does not pay Germany any part of the $11,000,000 within

11

12 months after the Agreement is fully executed, the Company will be required to

pay the full remaining amount to the United States Treasury on or before

December 2, 2023.

(iv)     The Offices agree to credit toward satisfaction of payment of the

Total Criminal Penalty the amount the Company pays in civil penalties to the

SEC, up to a maximum of $63,000,000, equal to approximately 20 percent of the

Total Criminal Penalty, so long as the Company pays such amount to the SEC

pursuant to the Company's separate resolution with the SEC concerning the same

underlying conduct described in the Statement of Facts.

The Company and the Offices agree that the Total Criminal Penalty is appropriate given the facts

and circumstances of this case, including the Relevant Considerations described in Paragraph 4

of this Agreement. The Total Criminal Penalty is final and shall not be refunded. Furthermore,

nothing in this Agreement shall be deemed an agreement by the Offices that the Total Criminal

Penalty is the maximum penalty that may be imposed in any future prosecution, and the Offices

are not precluded from arguing in any future prosecution that the Court should impose a higher

fine, although the Offices agree that under those circumstances, they will recommend to the

Court that any amount paid under this Agreement should be offset against any fine the Court

imposes as part of a future judgment. The Company acknowledges that no tax deduction may be

sought in connection with the payment of any part of the Total Criminal Penalty. The Company

shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source

with regard to the penalty amounts that the Company pays pursuant to this Agreement or any

other agreement entered into with an enforcement authority or regulator concerning the facts set forth in the attached Statement of Facts.

## Conditional Release from Liability

8.      Subject to Paragraphs 15-19, the Offices agree, except as provided in this Agreement, that they will not bring any criminal or civil case against the Company relating to any of the conduct described in the attached Statement of Facts or the criminal Information filed pursuant to this Agreement.  The Offices, however, may use any information related to the conduct described in the attached Statement of Facts against the Company:  (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false statement; (c) in a prosecution or other proceeding relating to any crime of violence; or (d) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code.

a.      This Agreement does not provide any protection against prosecution for any future conduct by the Company.

b.      In addition, this Agreement does not provide any protection against prosecution of any individuals, regardless of their affiliation with the Company.

## Corporate Compliance Program

9.      The Company represents that it has implemented and will continue to implement a compliance and ethics program designed to prevent and detect violations of the FCPA and other applicable anti-corruption laws throughout its operations, including those of its affiliates, agents, and joint ventures, and those of its contractors and subcontractors whose responsibilities include interacting with foreign officials or other activities carrying a high risk of corruption, including, but not limited to, the minimum elements set forth in Attachment C.

13

10.     In order to address any deficiencies in its internal accounting controls, policies, and procedures, the Company represents that it has undertaken, and will continue to undertake in the future, in a manner consistent with all of its obligations under this Agreement, a review of its existing internal accounting controls, policies, and procedures regarding compliance with the FCPA and other applicable anti-corruption laws.  Where necessary and appropriate, the Company agrees to adopt a new compliance program, or to modify its existing one, including internal controls, compliance policies, and procedures in order to ensure that it maintains: (a) an effective system of internal accounting controls designed to ensure the making and keeping of fair and accurate books, records, and accounts; and (b) a rigorous anti-corruption compliance program that incorporates relevant internal accounting controls, as well as policies and procedures designed to effectively detect and deter violations of the FCPA and other applicable anti-corruption laws.  The compliance program, including the internal accounting controls system will include, but not be limited to, the minimum elements set forth in Attachment C.

### Corporate Compliance Reporting

11.     The Company agrees that it will report to the Offices annually during the Term regarding remediation and implementation of the compliance measures described in Attachment C. These reports will be prepared in accordance with Attachment D.

12.     Thirty (30) days prior to the expiration of the Term, the Company, by the Chief Executive Officer and Chief Compliance Officer, will certify to the Offices, in the form of executing the document attached as Attachment F to this Agreement, that the Company has met its compliance obligations pursuant to this Agreement.

**Deferred Prosecution**

13.      In consideration of the undertakings agreed to by the Company herein, the

Offices agree that any prosecution of the Company for the conduct set forth in the attached

Statement of Facts be and hereby is deferred for the Term.  To the extent there is conduct

disclosed by the Company that is not set forth in the attached Statement of Facts, such conduct

will not be exempt from further prosecution and is not within the scope of or relevant to this

Agreement.

14.      The Offices further agree that if the Company fully complies with all of its

obligations under this Agreement, the Offices will not continue the criminal prosecution against

the Company described in Paragraph 1 and, at the conclusion of the Term, this Agreement shall

expire.  Within six (6) months after the Agreement's expiration, the Offices shall seek dismissal

with prejudice of the criminal Information filed against the Company described in Paragraph 1,

and agree not to file charges in the future against the Company based on the conduct described in

this Agreement and the attached Statement of Facts.  If, however, the Offices determine during

this six-month period that the Company breached the Agreement during the Term, as described

in Paragraph 15, the Offices' ability to extend the Term, as described in Paragraph 3, or to pursue

other remedies, including those described in Paragraphs 15 to 19, remains in full effect.

**Breach of the Agreement**

15.      If, during the Term, the Company (a) commits any felony under U.S. federal law;

(b) provides in connection with this Agreement deliberately false, incomplete, or misleading

information, including in connection with its disclosure of information about individual

culpability; (c) fails to cooperate as set forth in Paragraphs 5 and 6 of this Agreement; (d) fails to

15

implement a compliance program as set forth in Paragraphs 9 and 10 of this Agreement and Attachment C; (e) commits any acts that, had they occurred within the jurisdictional reach of the FCPA, would be a violation of the FCPA; or (f) otherwise fails to completely perform or fulfill each of the Company's obligations under the Agreement, regardless of whether the Offices become aware of such a breach after the Term is complete, the Company shall thereafter be subject to prosecution for any federal criminal violation of which the Offices have knowledge, including, but not limited to, the charges in the Information described in Paragraph 1, which may be pursued by the Offices in the U.S. District Court for the Eastern District of Virginia or any other appropriate venue. Determination of whether the Company has breached the Agreement and whether to pursue prosecution of the Company shall be in the sole discretion of the Offices. Any such prosecution may be premised on information provided by the Company or its personnel. Any such prosecution relating to the conduct described in the attached Statement of Facts or relating to conduct known to the Offices prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the Company, notwithstanding the expiration of the statute of limitations, between the signing of this Agreement and the expiration of the Term plus one year. Thus, by signing this Agreement, the Company agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus one (1) year. In addition, the Company agrees that the statute of limitations as to any violation of federal law that occurs during the Term will be tolled from the date upon which the violation occurs until the earlier of the date upon which the Offices are made aware of the violation or the duration of the Term plus five (5) years, and that

16

this period shall be excluded from any calculation of time for purposes of the application of the statute of limitations.

16.     In the event the Offices determine that the Company has breached this Agreement, the Offices agree to provide the Company with written notice of such breach prior to instituting any prosecution resulting from such breach.  Within thirty (30) days of receipt of such notice, the Company shall have the opportunity to respond to the Offices in writing to explain the nature and circumstances of such breach, as well as the actions the Company has taken to address and remediate the situation, which explanation the Offices shall consider in determining whether to pursue prosecution of the Company.

17.     In the event that the Offices determine that the Company has breached this Agreement:  (a) all statements made by or on behalf of the Company to the Offices or to the Court, including the attached Statement of Facts, and any testimony given by the Company before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Offices against the Company; and (b) the Company shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements or testimony made by or on behalf of the Company prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible.  The decision whether conduct or statements of any current director, officer or employee, or any person acting on behalf of, or at the direction of, the

17

Company, will be imputed to the Company for the purpose of determining whether the Company has violated any provision of this Agreement shall be in the sole discretion of the Offices.

18.     The Company acknowledges that the Offices have made no representations, assurances, or promises concerning what sentence may be imposed by the Court if the Company breaches this Agreement and this matter proceeds to judgment. The Company further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

19.     On the date that the period of deferred prosecution specified in this Agreement expires, the Company, by the Chief Executive Officer of the Company and the Chief Financial Officer of the Company, will certify to the Offices in the form of executing the document attached as Attachment E to this Agreement that the Company has met its disclosure obligations pursuant to Paragraph 6 of this Agreement. Each certification will be deemed a material statement and representation by the Company to the executive branch of the United States for purposes of 18 U.S.C. §§ 1001 and 1519, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

### Sale, Merger, or Other Change in Corporate Form of Company

20.     Except as may otherwise be agreed by the parties in connection with a particular transaction, the Company agrees that in the event that, during the Term, it undertakes any change in corporate form, including if it sells, merges, or transfers business operations that are material to the Company's consolidated operations, or to the operations of any subsidiaries or affiliates involved in the conduct described in the Statement of Facts, as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, transfer, or other change

18

in corporate form, it shall include in any contract for sale, merger, transfer, or other change in corporate form a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement.  The purchaser or successor in interest must also agree in writing that the Offices' ability to determine a breach under this Agreement is applicable in full force to that entity.  The Company agrees that the failure to include these provisions in the transaction will make any such transaction null and void.  The Company shall provide notice to the Offices at least thirty (30) days prior to undertaking any such sale, merger, transfer, or other change in corporate form.  The Offices shall notify the Company prior to such transaction (or series of transactions) if they determine that the transaction(s) will have the effect of circumventing or frustrating the enforcement purposes of this Agreement.  If at any time during the Term the Company engages in a transaction(s) that has the effect of circumventing or frustrating the enforcement purposes of this Agreement, the Offices may deem it a breach of this Agreement pursuant to Paragraphs 15-19 of this Agreement.  Nothing herein shall restrict the Company from indemnifying (or otherwise holding harmless) the purchaser or successor in interest for penalties or other costs arising from any conduct that may have occurred prior to the date of the transaction, so long as such indemnification does not have the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined by the Offices.

### Public Statements by Company

21.     The Company expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents or any other person authorized to speak for the Company make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Company set forth above or the facts described in the attached Statement of

Facts. Any such contradictory statement shall, subject to cure rights of the Company described

below, constitute a breach of this Agreement, and the Company thereafter shall be subject to

prosecution as set forth in Paragraphs 15-19 of this Agreement. The decision whether any public

statement by any such person contradicting a fact contained in the Statement of Facts will be

imputed to the Company for the purpose of determining whether it has breached this Agreement

shall be at the sole discretion of the Offices. If the Offices determine that a public statement by

any such person contradicts in whole or in part a statement contained in the Statement of Facts,

the Offices shall so notify the Company, and the Company may avoid a breach of this

Agreement by publicly repudiating such statement(s) within five (5) business days after

notification. The Company shall be permitted to raise defenses and to assert affirmative claims

in other proceedings relating to the matters set forth in the Statement of Facts provided that such

defenses and claims do not contradict, in whole or in part, a statement contained in the attached

Statement of Facts. This Paragraph does not apply to any statement made by any present or

former officer, director, employee, or agent of the Company in the course of any criminal,

regulatory, or civil case initiated against such individual, unless such individual is speaking on

behalf of the Company.

22.     The Company agrees that if it or any of its direct or indirect subsidiaries or

affiliates issues a press release or holds any press conference in connection with this Agreement,

the Company shall first consult with the Offices to determine (a) whether the text of the release

or proposed statements at the press conference are true and accurate with respect to matters

between the Offices and the Company; and (b) whether the Offices have any objection to the

release.

20

23.     The Offices agree, if requested to do so, to bring to the attention of law enforcement and regulatory authorities the facts and circumstances relating to the nature of the conduct underlying this Agreement, including the nature and quality of the Company's cooperation and remediation.  By agreeing to provide this information to such authorities, the Offices are not agreeing to advocate on behalf of the Company, but rather are agreeing to provide facts to be evaluated independently by such authorities.

### Limitations on Binding Effect of Agreement

24.     This Agreement is binding on the Company and the Offices, but specifically does not bind any other component of the Department of Justice, other federal agencies, or any state, local or foreign law enforcement or regulatory agencies, or any other authorities, although the Offices will bring the cooperation of the Company and its compliance with its other obligations under this Agreement to the attention of such agencies and authorities if requested to do so by the Company.  If the Court refuses to grant exclusion of time under the Speedy Trial Act, 18 U.S.C. § 3161(h)(2), all the provisions of this Agreement shall be deemed null and void, and the Term shall be deemed to have not begun, except that the statute of limitations for any prosecution relating to the conduct described in the Statement of Facts shall be tolled from the date on which this Agreement is signed until the date the Court refuses to grant the exclusion of time plus six months, and except for the provisions contained within Paragraph 2 of this Agreement.

### Notice

25.     Any notice to the Offices under this Agreement shall be given by electronic mail and/or personal delivery, overnight delivery by a recognized delivery service, or registered or

certified mail, addressed to: Chief, FCPA Unit, Fraud Section, Criminal Division, U.S. Department of Justice, 1400 New York Avenue NW, Washington, DC 20005 and Chief, Financial Crimes and Public Corruption Unit, United States Attorney's Office for the Eastern District of Virginia, 2100 Jamieson Avenue, Alexandria, VA 22314. Any notice to the Company under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, with copies by electronic mail, addressed to Robert D. Luskin and John S. Darden, Paul Hastings LLP, 2050 M Street NW, Washington, DC 20036. Notice shall be effective upon actual receipt by the Fraud Section or the Company.

**Complete Agreement**

26.     This Agreement, including its attachments, sets forth all the terms of the agreement between the Company and the Offices.  No amendments, modifications or additions to this Agreement shall be valid unless they are in writing and signed by the Offices, the attorneys for the Company and a duly authorized representative of the Company.

**AGREED:**

**FOR ABB LTD.:**

Date: 2 Dec. 2022

Andrea Antonelli
General Counsel and Company Secretary
ABB Ltd.

Date: 2 Dec. 2022

Natalia Shehadeh
Chief Integrity Officer
ABB Ltd.

Date: 12/2/2022

Robert D. Luskin
John S. Darden
Paul Hastings LLP

23

**FOR THE DEPARTMENT OF JUSTICE:**

JESSICA D. ABER
United States Attorney
Eastern District of Virginia

Heidi B. Gesch, Assistant U.S. Attorney

Date: 12/2/2022

GLENN S. LEON
Chief, Fraud Section
Criminal Division
United States Department of Justice

William E. Schurmann, Trial Attorney
Jonathan P. Robell, Assistant Deputy Chief

24

## COMPANY OFFICER'S CERTIFICATE

I have read this Agreement and carefully reviewed every part of it with outside counsel for ABB Ltd. (the "Company").  I understand the terms of this Agreement and voluntarily agree, on behalf of the Company, to each of its terms.  Before signing this Agreement, I consulted outside counsel for the Company.  Counsel fully advised me of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this Agreement.

I have carefully reviewed the terms of this Agreement with the Board of Directors of the Company.  I have advised and caused outside counsel for the Company to advise the Board of Directors fully of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into the Agreement.

No promises or inducements have been made other than those contained in this Agreement.  Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing this Agreement on behalf of the Company, in any way to enter into this Agreement. I am also satisfied with outside counsel's representation in this matter.  I certify that I am the General Counsel and Company Secretary for the Company and that I have been duly authorized by the Company to execute this Agreement on behalf of the Company.

Date: 2 Dec. 2022

**ABB LTD.**

_____
Andrea Antonelli
General Counsel and Company Secretary
ABB Ltd.

_____
Natalia Shehadeh
Chief Integrity Officer
ABB Ltd.

## CERTIFICATE OF COUNSEL

I am counsel for ABB Ltd. (the "Company") in the matter covered by this Agreement. In connection with such representation, I have examined relevant Company documents and have discussed the terms of this Agreement with the Company Board of Directors. Based on our review of the foregoing materials and discussions, I am of the opinion that the representative of the Company has been duly authorized to enter into this Agreement on behalf of the Company and that this Agreement has been duly and validly authorized, executed, and delivered on behalf of the Company and is a valid and binding obligation of the Company. Further, I have carefully reviewed the terms of this Agreement with the Board of Directors and the General Counsel and Company Secretary of the Company. I have fully advised them of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions and of the consequences of entering into this Agreement. To my knowledge, the decision of the Company to enter into this Agreement, based on the authorization of the Board of Directors, is an informed and voluntary one.

Date: 12/2/2022

By: _____

Robert D. Luskin
John S. Darden
Paul Hastings LLP
Counsel for ABB Ltd.